The CITY OF NEW YORK, Plaintiff,

v.

LASERSHIP, INC., Defendant.

No. 13 Civ. 7535 (GBD).

United States District Court, S.D. New York.

Signed July 9, 2014.

Filed July 10, 2014.

**83.** *See id.*

Aaron Michael Bloom, Eric Proshansky, New York City Law Department, New York, NY, for Plaintiff.

Kelly Anne Librera, Winston & Strawn LLP, ·Seth C. Farber, Dewey & LeBoeuf, L.L.P., New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Plaintiff, the City of New York, brings this action against Defendant LaserShip, Inc., alleging that the Defendant delivered untaxed cigarettes to New York consumers. Specifically, Plaintiff claims that by delivering untaxed cigarettes to New York consumers LaserShip violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO") (Claims III and IV), the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 et seq. ("CCTA") (Claims I and II), the New York Public Health Law 1399–ll ("N.Y. PHL § 1399–*ll* ") (Claims VII and VIII), and the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 et seq. ("PACT Act") (Claims V and VI). The City also seeks injunctive relief (Claim IX). Defendant moved pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1) to dismiss the Complaint. *See* ECF No. 8. Defendant's motion to dismiss is DENIED in its entirety.

### Background [1]

Defendant LaserShip, Inc., is a Delaware corporation that is engaged in package delivery and courier services. *See*

---

[1]. The following factual allegations are taken from the Complaint (or documents attached to it or incorporated by reference) and are

Compl. ¶ 19. Between approximately 2011 and 2013, LaserShip allegedly partnered with Regional Integrated Logistics ("RIL") as a "key link" in the illicit cigarette distribution network created by RIL to service smoke shops that were owned by the Seneca Nation of Indians ("SNI"). *Id.* ¶ 13. The· Complaint alleges that Defendant received, via intermediate carriers, cigarettes picked-up by RIL from the SNI smoke shops. LaserShip then delivered the cigarettes to residences and businesses of consumers in the New York City metropolitan area and New Jersey. *Id.* at ¶¶ 13, 31.

Plaintiff alleges that LaserShip had actual knowledge that it was delivering untaxed cigarettes. The Complaint alleges that in early 2011, RIL met with two LaserShip representatives, as well as the President of GMV Express, a company in the business of setting up package delivery networks. During this meeting, LaserShip was allegedly informed that it would deliver packages containing untaxed cigarettes. *Id.* ¶¶ 53–57.

Under their delivery arrangement with RIL and GMV, RIL picked up the packages from the SNI smoke shops and transported them to RIL's warehouse. RIL then sorted the packages and arranged for them to be shipped to regional hubs, including LaserShip's New York warehouse. *Id.* at ¶ 31. LaserShip allegedly delivered these packages of untaxed cigarettes to New York consumers. The Complaint alleges that over a two year period, Laser-Ship delivered approximately 74,974 cartons of cigarettes to New York consumers.' *Id.* ¶¶ 31, 60.

The Complaint alleges that LaserShip participated in the management and opera-

---

deemed to be true for the purposes of a motion to dismiss. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

tion of RIL by controlling the receipt of unstamped cigarettes from RIL and its third-party common carriers and the delivery of the cigarettes to end consumers in New York City and State. Specifically, LaserShip allegedly: (a) received unstamped cigarettes from RIL (via RIL's third party common carriers) for ultimate distribution and delivery to consumers; (b) used its own methods and practices to determine how and when to transport and distribute the unstamped cigarettes; (c) routinely shared information with RIL and the SNI smoke shops from LaserShip's package tracking systems; (d) shared information with customers of the SNI smoke shops from LaserShip's package tracking systems; (e) held contraband cigarettes in LaserShip's terminal for customer pick-up; (f) provided all of the logistics and delivery support services to RIL that would be required for the successful delivery of contraband cigarettes from the Seneca reservation to consumers in the City and elsewhere; and (g) accepted the financial and other risks of transporting contraband cigarettes. *Id.* ¶ 77.

### Legal Standard

A complaint must have "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Plausibility requires "more than labels and conclusions." *Id.* at 555, 127 S.Ct. 1955. Legal conclusions must be supported by well-pleaded factual allegations. *See Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* At this stage, the court is to accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the non-movant. *See Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009).

### The RICO Claims

Defendant LaserShip moves to dismiss Plaintiff's RICO claims in Counts III and IV on the basis that: (1) LaserShip did not participate in the "operation or management" of any alleged enterprise; (2) LaserShip's alleged acts do not constitute a "pattern of racketeering activity;" (3) Laser Ship did not proximately cause any injury to the City; and (4) having failed to adequately allege a substantive RICO claim, Plaintiff cannot maintain a RICO conspiracy claim. *See* Def. Mem. at 4–10.

1. Plaintiff Adequately Alleges "Operation or Management"

■ To state a civil RICO claim, the City must adequately allege that LaserShip conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity that caused injury to the City's business or property. *See* 18 U.S.C. ¶¶ 1962(c) and 1964(c); *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). RICO makes it unlawful "for any person employed by or associated with an enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." 18 U.S.C. § 1962(c).

■ Under the "operation and management test" articulated by the United States Supreme Court in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), to participate in the

conduct of an enterprise's affairs, "one must have some part in directing those affairs." *Id.* at 179, 113 S.Ct. 1163. *Reves'* "operation or management test" requires neither primary responsibility for enterprise affairs, nor, as the Defendant points out, a formal position in the enterprise, only that a defendant have "some part in directing the enterprise's affairs." 507 U.S. at 179, 113 S.Ct. 1163. In the Second Circuit, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage ..." *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 175–176 (2d Cir.2004). The question of operation or management "is essentially one of fact." *Id.* (citing *United States v. Allen,* 155 F.3d 35, 42–43 (2d Cir.1998)).

■ Plaintiff has sufficiently alleged that LaserShip had some part in directing the affairs of RIL. Specifically, Defendant allegedly received and delivered unstamped cigarettes on behalf of RIL, exercised discretion in using its own methods and practices to determine how and when to transport the unstamped cigarettes, provided all of the logistics and delivery support services to RIL that were required for successful delivery, and accepted the financial and other risks of transporting contraband cigarettes on behalf of RIL. *See* Compl. at ¶ 77. In addition, RIL had to seek authorization for customer pick-ups at LaserShip's facility. *Id.* at ¶ 46. Plaintiff has sufficiently alleged that LaserShip not only provided services which were essential to RIL's operation, but had some part in directing RIL's affairs and exercised discretion over the operation of the RIL enterprise.

2. Plaintiff Adequately Alleges Continuity

■ Defendant also argues that the alleged acts in the Complaint do not consti-tute "a pattern of racketeering activity" under § 1962(c). To state a claim under Section 1962(c), a plaintiff must allege a pattern of racketeering activity, which is defined as "at least two acts of racketeering activity ... within ten years ... after the commission of a prior act of racketeering activity." *Lorber v. Winston,* 962 F.Supp.2d 419, 438 (E.D.N.Y.2013) (quoting 18 U.S.C. § 1961(5)). In *H.J., Inc. v. Northwestern Bell Tel. Co.,* the Supreme Court clarified the pattern requirement as one that requires continuity, which may be either closed- or open-ended. 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

■ Closed-ended continuity refers to "a closed period of repeated conduct," whereas open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* To allege closed-ended continuity, Plaintiff must allege "a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. 2893. To allege open-ended continuity, Plaintiff must allege "a threat of continued racketeering activity." *Id.* Under either test, continuity is "centrally a temporal concept," which "depends on the specific facts of each case." *Id.*

■ The law is clear that "the duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit." *Cofacrédit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 243 (2d Cir.1999). "RICO defines 'racketeering activity' to include a host of criminal offenses, which are in turn defined by federal and state law." *Id.* at 242 (citing 18 U.S.C. § 1961(1)). Defendant does not dispute that violations of the CCTA constitute racketeering activity under RICO. *See* Def. Mem. at 5.

In *Cofacrédit, S.A. v. Windsor Plumbing Supply Co., Inc.,* the Second Circuit commented that it "has never held a period of less than two years to constitute a 'substantial period of time'" sufficient to establish closed-ended continuity. 187 F.3d 229, 242 (2d Cir.1999). More recently, the Second Circuit clarified that it has "not viewed two years as a bright-line requirement," although "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity." *Spool v. World Child Intern. Adoption Agency,* 520 F.3d 178, 184 (2d Cir.2008).

Defendant asserts that Plaintiff fails to satisfy the closed-ended continuity requirement because Plaintiff has failed to adequately allege an underlying predicate offense under the CCTA. *See* Def. Mem. at 7–9. In the alternative, Defendant argues that Plaintiff only alleges a single statutory violation, not multiple violations over a multi-year period. *Id.* Further, Defendant argues that Plaintiff has not alleged open-ended continuity because the Defendant "stopped cigarette deliveries in May 2013." *Id.* at 9.

█ The Complaint alleges a nationwide scheme involving numerous smoke shops, multiple transportation companies, and thousands of deliveries. *See* Compl. ¶¶ 5–7, 29–34. LaserShip allegedly began delivering cigarettes to consumers in New York City and New York State in or around March 2011 and continued on a constant basis until May 28, 2013. *Id.* ¶ 78. During this time, LaserShip made approximately 16,383 deliveries of unstamped cigarettes to addresses in New York State, including 13,167 to addresses in New York City. *Id.* at ¶¶ 32–34.

█ Plaintiff has alleged predicate acts which constitute a violation of the CCTA, *see infra* at 312–15, and which continued for a period of over two years. As Defendant recognizes, two years is a sufficient duration to find closed-ended continuity, and is exceeded here. *See* Def. Mem. at 8. Further, Plaintiff's allegations involve numerous predicate acts, participants, and victims, all factors that demonstrate close-ended continuity. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 181 (2d Cir.2004). Plaintiff has adequately pled close-ended continuity as required by RICO Section 1962(c).

█ Plaintiff has also adequately alleged open-ended continuity. The threat of future conduct is evaluated as it would appear at the time the conduct was committed. *See United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995) (finding open-ended continuity despite the fact that scheme was abandoned). Open-ended continuity may be shown if, "at the time of occurrence," the racketeering activity threatens future criminal activity. *Morrow v. Black,* 742 F.Supp. 1199, 1207 (E.D.N.Y.1990). Only if an activity has an "inherently terminable" goal, such as a sale of land, is a threat of continued activity negated as a matter of law. *DeFalco v. Bernas,* 244 F.3d 286, 324 (2d Cir.2001).

█ In the case at bar, Plaintiff has alleged predicate acts which lasted more than two years, and threatened future unlawful activity. Defendant could have continued to deliver unstamped cigarettes for as long as smoke shops kept selling them. Further, Defendant allegedly did not stop shipping cigarettes as part of the RIL network until RIL's shipments were enjoined by court order. *See* Compl. at ¶ 59. If proven, Plaintiff's allegations would be sufficient to establish the "continuity" of the Defendant's acts.

### 3. Plaintiff Adequately Alleges Proximate Cause

█ Defendant argues that LaserShip's alleged acts in violating the CCTA

did not proximately cause any injury to the City because the City's harm was caused by the taxpayer-customers, and not Laser-Ship. In resolving questions of proximate cause in the civil RICO context, courts should consider the relationship between the predicate act and the plaintiff's harm. *See Hemi Group, LLC v. City of New York,* 559 U.S. 1, 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010). There must be a direct causal connection between the conduct and the harm. *Id.*

■ Here, as alleged, the City's harm is directly linked to the predicate acts charged. The Complaint characterizes the City's harm as a loss of tax revenue. *See* Compl. at ¶ 60. The conduct alleged to establish the predicate acts is the Defendant's evasion of the New York tax collection scheme by delivering untaxed cigarettes. As such, the conduct causing harm is the same conduct that creates liability for the predicate act. The selling, shipping, and transporting of unstamped cigarettes was a direct cause of the tax evasion that injured the City. *See City of New York v. Gordon,* 1 F.Supp.3d 94, 12–cv–4838 (JMF), 2013 WL 2190060, 2013 U.S. Dist. LEXIS 71953 (S.D.N.Y. May 21, 2013) (denying motion to dismiss and granting preliminary injunction against common carrier under the CCTA); *City of New York v. Chavez,* 11–cv–2691, 2012 WL 1022283, 2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012) (denying motion to dismiss CCTA and RICO claims).

Accordingly, Defendant's motion to dismiss the City's § 1962(c) RICO claim is denied.[2]

### The CCTA Claims

■ The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). "[C]ontraband cigarettes" are defined with reference to state law as those:

> in excess of 10,000 ..., which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes.

18 U.S.C. § 2341(2). "Together, these provisions establish four elements for a CCTA violation: that a party (1) knowingly 'ship, transport, receive, possess, sell, distribute or purchase' (2) more than 10,-000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps." *City of New York v. Golden Feather Smoke Shop, Inc.,* No. 08–cv–3966, 2009 U.S. Dist. LEXIS 76306, at *74–75, 2009 WL 2612345, at *11 (E.D.N.Y.2009).

New York State imposes a tax on all cigarettes possessed for sale or use in New York State, except for those cigarettes it is "without power" to tax. *See* N.Y. Tax L. § 471 ("There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax ...."). New York State also imposes a cigarette use tax. *See* N.Y. Tax Law § 471–a. In addition to the State taxes, the City of New York imposes its own

---

**2.** Defendant also moves to dismiss Plaintiff's § 1962(d) RICO conspiracy claim on the basis that Plaintiff has failed to allege an underlying substantive RICO claim. *See* Def. Mem. at 10–11. Having found that Plaintiff adequately alleged a substantive RICO claim, this Court also denies Defendant's motion to dismiss the RICO conspiracy claim.

cigarette tax pursuant to N.Y. City Admin. Code § 11–1302.

The New York State Department of Taxation and Finance pre-collects these taxes from licensed stamping agents. These agents (who are sometimes also wholesalers) buy stamps from the State and cigarettes from a manufacturer. "Before selling the cigarettes to other wholesalers or retailers, agents must affix a stamp to each pack of cigarettes to demonstrate payment of the tax." *Oneida Nation v. Cuomo,* 645 F.3d 154, 159 (2d Cir. 2011). This stamping system "mandates, that these agents be the only-entry point for cigarettes into New York's stream of commerce." *Id.*

The City claims that LaserShip violated the CCTA by transporting unstamped cigarettes to New York State and City customers. In response to these allegations, LaserShip argues that the City's CCTA claim fails because: (1) LaserShip is exempt from liability under the CCTA as a contract or common carrier with a proper bill of lading; (2) LaserShip is not alleged to have transported "a quantity in excess of 10,000 cigarettes" in a single transaction; and (3) LaserShip is not alleged to have distributed cigarettes to individual consumers in a sufficient quantity to trigger city and state taxes. *See* Def. Mem. at 11.

 Contrary to Defendant's assertion, the plain, unambiguous text of the CCTA imposes no "in a single transaction requirement." *See* Def. Mem. at 15–19. It is a fundamental tenet of statutory interpretation "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 461–62, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Thus, if a statute's text is unambiguous, its "language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). The text of the CCTA is unambiguous. It provides that "a quantity in excess of 10,000 cigarettes" constitutes contraband. 18 U.S.C. § 2341(2). It says nothing to suggest that the relevant quantity must be found in a single transaction. Accordingly, this Court joins the other courts in this Circuit that have considered the issue in any detail, and finds that the CCTA does not impose a single transaction requirement.[3]

 Next, LaserShip makes another argument in reliance on the language of Section 2341(2). As noted *supra,* that provision defines "contraband cigarettes" to be a quantity in excess of 10,000 unstamped cigarettes "which are in the possession of any person *other than*" certain specified persons, including a manufacturer, a person authorized to account for and pay state cigarette taxes, and, most relevant for present purposes, "a common or contract carrier transporting the ciga-

---

**3.** *See, e.g., Gordon,* 1 F.Supp.3d at 102–06, 2013 WL 2190060, at *5–7, 2013 U.S. Dist. LEXIS 71953, at *16–22 (rejecting single transaction requirement and holding that Section 2341(2) applies without regard for whether that quantity is shipped, transported, received, possessed, sold, distributed, or purchased in one or more than one transaction); *New York v. BB's Corner, Inc.,* 2012 WL 2402624, at *5, 2012 U.S. Dist. LEXIS 88542, at *14 (S.D.N.Y. June 25, 2012) (holding that

"sales can be aggregated" for CCTA violations and finding a retailer's aggregated sales would exceed statutory requirement); *Golden Feather, Inc.,* 2009 WL 2612345, at *34–35, 2009 U.S. Dist. LEXIS 76306, at *101–02 ("The Court rejects the view that defendants can sell unlimited quantities of unstamped cigarettes so long as they avoid making any single sale in excess of 49 cartons. Nothing in the CCTA provides that for cigarettes to be considered contraband they must be sold in a single transaction.")

rettes involved under a proper bill of lading or freight bill." 18 U.S.C. § 2341(2) (emphasis added). The obvious purpose of this provision is to allow for the possession of unstamped cigarettes by participants in the supply and distribution chain by which cigarettes move from their place of manufacture to stamping agents in a particular state. *See* S.Rep. No. 95–962 (explaining that the provision allows "[t]he legitimate carrier [to move] a shipment of untaxed cigarettes . . . prior to the receipt by the intended state").

LaserShip, however, attempts to go one step further, contending that the provision creates a safe harbor for contract and common carriers to transport unstamped cigarettes as long as the cigarettes are shipped under a proper bill of lading. *See* Def. Mem. at 12–15.

Section 2341(2) defines cigarettes as noncontraband while they are "in the possession of" a common or contract carrier, but the CCTA makes it unlawful for "any person"—without limitation—not only to "possess" contraband cigarettes, but also to "ship, transport, receive, . . . sell, distribute, or purchase" them. 18 U.S.C. §§ 2341–42. While LaserShip is indisputably a common carrier and may well have had a proper bill of lading, neither the SNI smoke shops nor the consumers to whom LaserShip delivered the cigarettes are persons permitted by Section 2341(2) to possess unstamped cigarettes. Thus, the cigarettes at issue were plainly contraband when in the possession of SNI smoke shops and when in the possession of the consumer. It follows that LaserShip "receive[d]" contraband cigarettes from SNI smoke shops and "distribute[d] contraband

cigarettes to the consumers. 18 U.S.C. §§ 2341–42. The fact that the cigarettes could be characterized as non-contraband while in a carrier's possession does not immunize LaserShip from these prohibitions.[4]

◼ Lastly, LaserShip argues that the New York City and State "return from vacation" tax exemptions, which apply to "four hundred cigarettes [two cartons] or less brought into the City [State], on, or in the possession of, any person," N.Y. Tax L. § 471–a; N.Y.C. Ad.Code § 11–1302(b)(1), require dismissal of the CCTA claim because "[t]he city has not alleged that any of LaserShip's deliveries to individual consumers exceeded four hundred cigarettes." Def. Mem. at 19. Defendant's argument is contrary to the language of the statutory provisions.

The cited exemptions by their plain terms ("brought into the City, on or in possession of, any person") apply to someone who himself brings two cartons into the State/City (*e.g.* a returning vacationer), not a delivery service that receives bulk shipments of cigarettes and then distributes them to consumers, as here. *See* Compl. ¶¶ 31, 54. Further, the burden of proving an exemption to the tax is on LaserShip. *See* N.Y. Tax L. § 471 ("It is presumed that all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable hereunder shall be upon the person in possession thereof"); N.Y.C. Ad.Code § 11–1302(d) (same). LaserShip does not argue that it is a returning vacationer, and has put forth no facts to support its claim of exemption.

---

**4.** LaserShip's additional argument that Section 2341(2) does not apply when a common carrier such as LaserShip receives unstamped cigarettes from another common carrier, as opposed to directly from a smoke shop, is misplaced. *See* Def. Mem. at 15. Cigarettes

do not lose contraband status under Section 2341(2) merely by being transferred through a common carrier and Plaintiff has still sufficiently alleged that LaserShip shipped, transported, received and distributed contraband cigarettes under 18 U.S.C. §§ 2341–12.

Accordingly, Defendant's motion to dismiss the CCTA claims is denied.

### The Public Health Law Claims

Defendant argues that the City lacks standing under Public Health Law § 1399–ll because the 2013 amendment authorizing the City's suit postdates LaserShip's violation of the statute. Defendant's argument is inconsistent with the legislative purpose of the amendment.

 In New York, courts apply a "strong presumption of prospectivity" to statutes postdating the conduct they punish. *Majewski v. Broadalbin–Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 673 N.Y.S.2d 966, 970, 696 N.E.2d 978 (1998) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). However, as Defendant concedes, the presumption of prospectivity is subject to an exception for "remedial" statutes, which are presumed to operate retroactively, unless to do so would impair vested rights. *See Marino S., Jr. v. Angel Guardian Children and Family Servs., Inc.*, 100 N.Y.2d 361, 370–71, 763 N.Y.S.2d

796, 795 N.E.2d 21 (2003). The 2013 amendment is remedial—it is designed to correct imperfections in law, and provides a new remedy for an existing prohibited wrong. *See* McKinney's Statutes § 54.

By enhancing enforcement with a grant of standing to additional government entities, the 2013 amendment corrects an imperfection and "provides a change in the form of a remedy" for an "existing prohibited wrong."[5] *Id.* LaserShip's argument that a remedial statute may not apply "to pending actions if it creates a new remedy where none previously existed," is irrelevant. Def. Mem. at 23. First, there was no pending action. The 2013 amendment is applied here in an action filed after the effective date of the amendment. In addition, the 2013 amendment does not "create a new remedy where none previously existed." It merely authorizes other government entities to enforce a preexisting remedy for a preexisting wrong. Accordingly, the City has standing to pursue its claims under the New York Public Health statute.[6]

---

**5.** *See, e.g., Snyder v. Newcomb Oil Co.*, 194 A.D.2d 53, 60, 603 N.Y.S.2d 1010 (4th Dep't 1993) (retroactively applying amendment providing oil spill victims a direct claim against the spiller because it provided an additional remedy for a pre-existing wrong and corrected a statutory imperfection); *People v. Parker*, 78 Misc.2d 224, 356 N.Y.S.2d 809 (N.Y.App. Div.1974), *aff'd* 38 N.Y.2d 743, 381 N.Y.S.2d 43, 343 N.E.2d 761 (1975) (amendment granting Attorney General standing to sue is remedial because designed to provide additional and more effective enforcement of remedy for pre-existing wrong); *New York v. Wolowitz*, 96 A.D.2d 47, 61, 468 N.Y.S.2d 131 (2d Dep't 1983) (noting same); *Cady v. County of Broome*, 87 A.D.2d 964, 965, 451 N.Y.S.2d 206 (3d Dep't 1982) (amendment extending benefits to class of persons arbitrarily denied them "is remedial and should be applied retrospectively"); *Mlodozeniec v. Worthington Corp.*, 9 A.D.2d 21, 23–24, 189 N.Y.S.2d 468 (3d Dep't 1959) (retroactively applying statute extending statute of limitations for Workers'

Compensation claims as augmenting remedy for preexisting wrong).

**6.** The doctrine of constitutional avoidance has no application here because LaserShip fails to point to any viable constitutional concerns. Contrary to Defendant's assertion, the City does not seek to retroactively impose new obligations or increase LaserShip's exposure to monetary penalties. The $5,000 per violation civil penalty has always been authorized, as well as criminal penalties of $10,000 per violation, and restitution. *See State v. Cortelle Corp.*, 38 N.Y.2d 83, 85, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975) ("Statutory provisions which provide … standing do not create or impose new obligations."). Further, the 2013 amendment expressly bars duplicative penalty recoveries by the City and State, and to the extent that the alternative $100 per pack civil penalty or "other appropriate relief," expands exposure, the City has expressly withdrawn reliance on these measures. *See* Pl. Mem. at 30.

**316**

### The PACT Act Claims

 The PACT Act prohibits any person "who receives" the Attorney General's noncompliant sellers list or any person "who delivers cigarettes ... to consumers," from knowingly completing deliveries for persons on the list. 15 U.S.C. § 376a(e)(2). The Complaint alleges that LaserShip knowingly delivered cigarettes for Indian Smokes, which was added to the non-compliant list on May 5, 2011. *See* Compl. ¶¶ 84, 92. LaserShip contends, however, that the City has not properly alleged that LaserShip knew that Indian Smokes was on the non-compliant list. *See* Def. Mem. at 24–27.

The City alleges such knowledge, both explicitly (Compl. ¶ 93) and through facts that "plausibly suggest" it. *Id.* ¶¶ 19, 31–34, 82–84; *see also Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937. The Complaint alleges that Indian Smokes was on the non-compliant sellers list (¶ 84), and quotes from the PACT Act's requirement that the U.S. Attorney General "(i) distribute the list to ... (II) common carriers and other persons that deliver small packages to consumers in interstate commerce" and "(ii) publicize and make the list available to any other person engaged in the business of interstate deliveries or who delivers cigarettes or smokeless tobacco in or into any State." 15 U.S.C. § 376a(e)(1)(A); Compl. ¶ 82. In connection with these statutory provisions, LaserShip's operation as a package delivery service, and its delivery of cigarettes (Compl. ¶¶ 19, 31–34), more than plausibly suggests that the Attorney General, as was his duty, distributed, publicized, and made the list (naming Indian Smokes) available to LaserShip. Plain-

tiff's allegations plausibly suggest that LaserShip knowingly delivered cigarettes for an entity on the ATF's Non–Compliant List.[7]

### Conclusion

Defendant's motion to dismiss is DENIED. The Clerk of the Court is directed to close motion # 8 on docket 13–cv–7535.

SO ORDERED.

---

**7.** Defendant moves to dismiss Plaintiff's claim for injunctive relief on the basis that the City has failed to allege that LaserShip has violated any of the enumerated statutes or that LaserShip poses a threat of future violations. As noted above, Plaintiff has sufficiently al-

leged LaserShip's violation of the CCTA, PACT Act and N.Y. PHL § 1399–*ll*, as well as the potential for future violations. Accordingly, Defendant's motion to dismiss Count IX is denied.