Chief Judge Breitel.
 

 These are cross appeals in an action brought by the Attorney-General on behalf of the State to
 
 *85
 
 enjoin certain allegedly fraudulent practices, obtain redress for defrauded persons, and dissolve the corporations engaged in the fraudulent practices. The issue on appeal arises on a motion to dismiss five of nine causes of action on the ground that they are barred by the three-year Statute of Limitations applicable to "an action to recover upon a liability, penalty or forfeiture created or imposed by statute” (CPLR 214, subd 2).
 

 Special Term dismissed three of the causes of action and the Appellate Division affirmed. Both sides have cross-appealed by leave of the Appellate Division.
 

 The issue is whether the Attorney-General’s challenged causes of action, addressed to allegedly fraudulent practices of defendants, rely on liabilities, penalties, or forfeitures created or imposed by statute and are therefore barred by the three-year Statute of Limitations. The action, to be sure, was brought pursuant to section 1101 (subd [a], par [2]) of the Business Corporation Law and section 63 (subd 12) of the Executive Law.
 

 The orders of the Appellate Division should be modified. None of the challenged causes of action is barred and the three dismissed causes of action should be reinstated. The applicable statutes cited above did not "make” unlawful the alleged fraudulent practices, but only provided standing in the Attorney-General to seek redress and additional remedies for recognized wrongs which pre-existed the statutes. Statutory provisions which provide only additional remedies or standing do not create or impose new obligations.
 

 The complaint alleges that from August of 1966 to January 1, 1968, defendant Berlin, aided by defendant Kapin, acquired title to residential real properties from their owners. The individual defendants acted through various corporations in which they were officers or principal stockholders. Defendant Berlin would visit distressed owners of residences whose mortgages were about to be foreclosed and induce them to convey title by entering into sale-leaseback agreements. The owners purportedly relied upon oral representations that the deeds were merely collateral for loans. They were told that for a stated "fee” at the expiration of the leases their titles would be reconveyed. When, however, the owners tendered the stated sums, defendants would reject or avoid the tender and refuse to reconvey title. The complaint alleges that these representations were willfully false and. part of a scheme to
 
 *86
 
 obtain the permanent ownership of distressed properties by fraud.
 

 The Attorney-General started the action on January 26, 1972. Relevant to the challenged causes of action, he sought to dissolve defendant corporations pursuant to section 1101 (subd [a], par [2]) of the Business Corporation Law and restitution for the defrauded owners pursuant to section 63 (subd 12) of the Executive Law. He also sought to restrain defendants from disposing of all property obtained by the frauds described and to enjoin defendants from engaging in the allegedly fraudulent practices.
 

 Defendants rely on CPLR 214. CPLR 214 (subd 2) provides that "an action to recover upon a liability, penalty or forfeiture created or imposed by statute” must be commenced within three years of its accrual. In applying a Statute of Limitations it is basic that one look to the essence of plaintiff's claim and not to the form in which it is pleaded
 
 (Brick v Cohn-HallMarx Co.,
 
 276 NY 259, 264; accord
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395, 403;
 
 King v King,
 
 13 AD2d 437, 439).
 

 CPLR 214 (subd 2) is a consolidation of sections (§ 48, subd 2; § 49, subd 3; § 50, subd 2) of the former Civil Practice Act, applicable to actions for wrongs not recognized in the common or decisional law (see
 
 People v Duggan,
 
 30 AD2d 736; see, also, e.g.,
 
 Lorberblatt v Gerst,
 
 10 NY2d 244, 248;
 
 Schmidt v Merchants Desp. Transp. Co.,
 
 270 NY 287, 304-305; cf.
 
 Bevelander v Town of Islip,
 
 10 AD2d 170, 171-172; see, generally, 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.02). That the statutes authorizing the Attorney-General to bring this action appear to be or are new to the law is not dispositive. As applied to the allegations in this case, they create no new claims but only provide particular remedies and standing in a public officer to seek redress on behalf of the State and others. Moreover, the kind of wrong the Attorney-General seeks to redress is not a new one to the decisional law but a now rather old and common type of fraud.
 

 Subdivision 12 of section 63 of the Executive Law provides in relevant part that: "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney-general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York * * * for an order enjoining the continuance of such business activity or of any fraudulent
 
 *87
 
 or illegal acts, directing restitution * * *. The word 'fraud’ or 'fraudulent’ as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretence, false promise or unconscionable contractual provisions.” While this provision may in part expand the definition of fraud so as to create a new liability in some instances, it also incorporates already existing standards applied to fraudulent behavior always recognized as such (compare
 
 Matter of State of New York v Interstate Tractor Trailer Training,
 
 66 Misc 2d 678-682;
 
 Matter of State of New York v Bevis Ind,
 
 63 Misc 2d 1088, 1090, with
 
 Matter of State of New York v ITM, Inc.,
 
 52 Misc 2d 39, 50).
 

 The complaint alleges, as noted earlier, that defendant Berlin made willful misrepresentations to induce the transfer of property to him and his creatures to the profit of defendants. Such conduct, if proved, is a now classic wrong on a common-law theory of promissory fraud
 
 (Adams v Gillig,
 
 199 NY 314, 322-323; see, e.g.,
 
 Bloomquist v Farson,
 
 222 NY 375, 379-380;
 
 Mills Studio v Chenango Val. Realty Corp.,
 
 15 AD2d 138, 140-141; Restatement, Torts, § 530; Restatement, Contracts, § 473; Prosser, Torts [4th ed], § 109, especially n 91). Hence, defendants’ alleged actions are and were wrongful prior to and independent of the Executive Law (§ 63, subd 12).
 

 Similarly the Business Corporation Law (§ 1101, subd [a], par [2]) does not create, at least insofar as the allegations in the complaint are concerned, a new cause of action. It provides, in pertinent part, that:
 

 "The attorney-general may bring an action for the dissolution of a corporation upon * * * the following grounds:
 

 * * *
 

 "(2) That the corporation has exceeded the authority conferred upon it by law, or has violated any provision of law whereby it has forfeited its charter, or carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to the public policy of the state has become liable to be dissolved.”
 

 The State’s cause of action is for the abuse of power entrusted to its creature, a corporate body. In this sense, apart from any possible wrong to individuals, it is also a wrong against the State. This wrong against the State gave rise to the right of the State (or the sovereign) to petition courts to
 
 *88
 
 amend corporate charters or dissolve corporate existence. It is both traceable back to English common law and has continued into our own (1 Blackstone’s Commentaries, 484 [15th ed, 1809];
 
 People v Miner, 2
 
 Lans 396, 398; 2 Hornstein, Corporation Law and Practice, § 815; cf.
 
 Petrogradsky Mejdunarodny Kommerchesky Bank v National City Bank,
 
 253 NY 23, 30-31).
 

 In short, the alleged fraudulent acts of the corporate defendants are actionable wrongs against the State, pre-existent to and independent of the enactment of the procedural remedy in section 1101 (semble contra
 
 People v Society of St. Colle, Italy,
 
 177 Misc 419, 420). The statute may limit or broaden the remedy, even define its exercise and by whom, but it did not create or impose a liability, penalty or forfeiture in the sense of CPLR 214. Section 1101 merely vests in the Attorney-General, or merely only codifies, his standing to vindicate the State’s right and provides for dissolution of the corporate abuser of the State’s grant of corporate existence (cf.
 
 People v Santa Clara Lbr Co.,
 
 126 App Div 616, 618).
 

 Moreover, section 1101 of the Business Corporation Law established procedures for the enforcement of sanctions against corporate abuse of powers. The section is the statutory successor to section 1798 of the former Code of Civil Procedure, which was held only to modify the law of procedure and not to affect or create any new liability, penalty or forfeiture
 
 (People v Atlantic Ave. R. R. Co.,
 
 125 NY 513, 516-517). Thus, in the
 
 Atlantic Ave.
 
 case, the court said: "I think it beyond question, therefore, that the section does not establish or pretend to establish any rule of liability, but simply to fix and enumerate the classes of cases in which, if liability does exist, the attorney-general may move * * * That section relates, therefore, merely to procedure, and does not determine, much less enlarge, existing rules of corporate liability. It accomplishes nothing, therefore, to say that the action is brought under section 1798.” Indeed, the procedural roots of section 1101 can be traced back into old English law.
 

 There was some confusion in early English law about what proceeding was proper when the sovereign sought to dissolve an existing corporation for abuse of power (Holdsworth, English Corporation Law in the 16th and 17th Centuries, 31 Yale LJ 382, 402). The authoritative view appears to be that it was in the ancient proceeding of
 
 scire facias,
 
 not quo warranto, that the sovereign could assert that "a legal existing [corpo
 
 *89
 
 rate] body * * * [was] guilty of an abuse of the power entrusted to [it]” and seek its dissolution
 
 (Rex v Pasmore
 
 [1789, KB], 3 TR 199, 244-245; 100 Eng Rep 531, 555 [Ashhurst, J.]). This same confusion was brought forward into American common law, including that of New York
 
 (People v
 
 Miner, 2 Lans 396, 398,
 
 supra;
 
 cf., e.g.,
 
 State [Winsor] v Brown,
 
 31 NJ L 355, 356; see, generally, Bouvier’s Law Dictionary [1914],
 
 scire facias,
 
 at p 3015).
 

 Although
 
 scire facias
 
 would appear to have been the proper form of action, nothing in this analysis depends upon that. The proper form was
 
 either^scire facias ox
 
 quo warranto. Both of these forms in this context were abolished by section 428 of the former Code of Procedure (The Field Code) and the remedies previously available under these forms were incorporated into section 430, the predecessor to section 1798 of the former Code of Civil Procedure (The Throop Code). Thus, the modern analogue of
 
 scire facias
 
 in section 1101 does not relate to any new substantive wrong, and, indeed, does not create any new remedy.
 

 In sum, analysis of the challenged causes of action reveals that they seek essentially to redress wrongs previously known to the law, long before the enactment of the statutes discussed. These causes of action, therefore, do not depend upon liabilities, penalties, of forfeitures created or imposed by statute within the meaning of CPLR 214 (subd 2). Put another way, a statute in regulating a substantive right or the procedure for its enforcement does not create or impose a liability, penalty or forfeiture.
 

 Consequently, all of the challenged causes of action were timely brought'within the so-called residual six-year period of limitation (CPLR 213, subd 1). The question raised by defendants-appellants whether Special Term, applying CPLR 214 (subd 2), properly calculated the limitation period in relation to the first and third causes of action, which it refused to dismiss, is no longer relevant.
 

 Finally, defendants-appellants’ contention that Special Term’s temporary injunction against defendants disposing of any property having a source related to the transactions described in the complaint or "similar transactions” is unduly vague is not persuasive. In determining the class of transactions involved there should be little difficulty, if they followed the pattern described.
 

 .Accordingly, the order of the Appellate Division should be
 
 *90
 
 modified, with costs to plaintiff, to the extent of reinstating the second, fourth and fifth causes of action, and should otherwise be affirmed. The certified question should be answered in the negative.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order modified, with costs to plaintiff, in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.