NEM RE RECEIVABLES,
LLC, Plaintiff,

v.

FORTRESS RE, INC., Defendant.

15 CIV. 3875

United States District Court,
S.D. New York.

Signed March 24, 2016

Mary Cannon Veed, Mary Cannon Veed & Associates, Hinsdale, IL, for Plaintiff.

Julius Addison Rousseau, III, Lee Andrew Pepper, Arent Fox LLP, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

As the assignee of the reinsurance receivables of NEM Re–Insurance Corporation, formerly known as Federated Reinsurance Company ("Federated"), Plaintiff NEM Re Receivables, LLC ("NEM Re") seeks (1) an accounting for amounts owed by Defendant Fortress Re, Inc. ("Fortress"); (2) the amount found to be due as a result of the accounting, including pre-judgment and post-judgment interest; and (3) attorneys' fees and costs. (Dkt. No. 1.) Currently before the Court is Fortress's Motion to Dismiss the Complaint (Dkt. No. 6) which was converted by the Court into a motion for summary judgment ("Motion") (Dkt. No. 13). In the Motion, Fortress seeks dismissal of NEM Re's Complaint for Accounting ("Complaint") on the ground that the cause of action is essen-

tially for breach of contract, and therefore, the statute of limitations has run. (Dkt. No. 8.) For the reasons stated below, Fortress's Motion is GRANTED.

## I. BACKGROUND

### A. FACTUAL HISTORY[1]

Fortress served as agent and manager for insurance companies, including Federated, who participated in a reinsurance pool, known as the Fortress Re pool. Through the Fortress Re pool, insurers collectively insured, and Fortress administered, aviation risks, among other things. In its role as agent and manager, Fortress was in possession of letters of credit and other funds belonging to Federated which were applied to satisfy Federated's obligations in the Fortress Re pool with any surplus being returned to Federated.

In 1990, Federated became insolvent and was placed into liquidation under the supervision of the Commissioner of Insurance of the State of New York ("Commissioner") and the Supreme Court of New York. At that time, the Fortress Re pool stopped accepting business on behalf of Federated,[2] but claims and cash flows associated with previously written reinsurance business continued to develop after the expiration of the contracts. In 2004, the Commissioner assigned all of Federated's then-uncollected accounts receivable to NEM Re.

Following the September 11, 2001 terrorist attacks at New York's World Trade Center, Fortress's clients brought several lawsuits and a series of arbitrations against it. After judgments were entered against Fortress and its two principals in 2004, Fortress ceased all business operations.

On May 13, 2004, Fortress sent NEM Re a check in the amount of $48,652.96 and indicated that it "believe[d] we will have additional funds payable to NEM Re" when the process of winding down all accounts was completed. (Dkt. No. 7, Ex. 2.)

On November 29, 2004, Glenn Drew, the President of Fortress, wrote NEM Re regarding a settlement agreement related to additional funds held on behalf of Federated. (Dkt. No. 7, Ex. 3.) The settlement agreement referenced in the letter never came to fruition.

By letter dated May 23, 2005, outside counsel for NEM Re requested that Fortress remit all remaining funds held on behalf of Federated, which were alleged to be at least $136,327.65. (Dkt. No. 7, Ex. 4.) Fortress neither sent nor promised to send NEM Re any additional funds as a result of that letter.

NEM Re alleges that on June 4, 2009, Fortress informed NEM Re that it was holding over $145,000 from previously written reinsurance business.[3] (Dkt. No. 1

---

1. The factual summary presented herein derives from the following documents: NEM Re's Complaint for Accounting, filed May 12, 2015 ("Complaint") (Dkt. No. 1); Fortress's Memorandum of Law in Support of Fortress Re, Inc.'s Motion to Dismiss the Complaint, filed July 27, 2015 ("Memo. of Law") (Dkt. No. 8); Declaration of Glenn A. Drew in Support of Fortress's Motion to Dismiss, filed July 27, 2015 ("Drew Declaration" or "Drew Decl.") (Dkt. No. 7); NEM Re's Memorandum in Opposition to Rule 12(b)(6) Motion to Dismiss, filed Aug. 4, 2015 ("Opposition") (Dkt. No. 10); and Fortress's Reply Memorandum of Law in Support of Fortress Re,

Inc.'s Motion to Dismiss the Complaint, filed Aug. 11, 2015 ("Reply") (Dkt. No. 12). Except where specifically referenced, no further citation to these sources will be made.

2. Fortress argues that Federated was a member of the Fortress Re pool between July 1, 1979 and June 30, 1981. (Dkt. No. 8 at 2.) However, the date upon which Federated ceased participating in the Fortress Re pool is irrelevant for the purposes of this Motion.

3. The Court was not provided with a copy of this communication.

at ¶ 12.) NEM Re claims that Fortress indicated that the funds had been deposited into a segregated trust account for the benefit of Federated/NEM Re. NEM Re alleges that despite repeated demands, Fortress has confirmed it continues to hold those funds but has failed to provide the funds to NEM Re or justify their retention.

On May 12, 2015, NEM Re filed the current action seeking: (1) an accounting for the funds held by Fortress on behalf of Federated; (2) payment of the amount found to be due as a result of the accounting, including prejudgment and post judgment interest; and (3) attorneys' fees and costs. (Dkt. No. 1.)

## B. FORTRESS'S MOTION FOR SUMMARY JUDGMENT

On July 27, 2015, Fortress filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 6), attaching the Drew Declaration and accompanying exhibits (Dkt. No. 7). Fortress argues that NEM Re's claims sound in contract, and under New York law, the statute of limitations began to run when NEM Re had a legal right to demand payment. (Dkt. No. 8 at 5.) Fortress argues that NEM Re possessed this right in 2004 when it became the assignee of the reinsurance receivables of Federated, and therefore, the six-year statute of limitations has run, barring this action. (Id. at 6–7.)

In its Opposition, NEM Re argues that this action is for an accounting, and the six-year statute of limitations does not begin to run until the trust is terminated or is repudiated by the trustee, neither of which has occurred here. (Dkt. No. 10 at 2–4.) In addition, NEM Re argues that the Court should not consider the Drew Declaration and its exhibits because these extraneous documents are not "integral" to the Complaint. (Id. at 4–6.)

In its Reply, Fortress contends that NEM Re has failed to allege an obligation to provide an accounting or to attach a contract creating any such fiduciary duty between Fortress and Federated. (Dkt. No. 12 at 1.) Fortress also argues that the essence of NEM Re's claim is for breach of contract as it seeks monetary damages. (Id. at 2–4.) Regarding the Drew Declaration, Fortress asserts that the Court can dismiss the Complaint based on statute of limitations grounds without considering the Drew Declaration; however, it argues that the Drew Declaration should be considered because it is integral to NEM Re's allegations. (Id. at 4–5.)

On August 18, 2015, the Court held a telephone conference with the parties regarding the motion to dismiss. (See Dkt. Minute Entry for Aug. 18, 2015.) On August 19, 2015, the Court issued an order converting the motion to dismiss to a motion for summary judgment and permitting the parties to submit additional papers to the Court. (Dkt. No. 13.) The parties submitted a schedule, which the Court endorsed, indicating that a response to the Motion for summary judgment, if necessary, was due by February 15, 2016. (Dkt. No. 17.) The Court did not receive an opposition to the Motion so it will now consider Fortress's Motion based upon the parties' initial submissions.

## II. LEGAL STANDARD

The Court may grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In making this assessment, the Court looks to the relevant substantive law to determine which facts are material: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive summary judgment, the disputed factual issues must also be "genuine"—that is, "sufficient evidence [must] favor[ ] the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts, and it may not rely on conclusory allegations or unsubstantiated speculation." *In re Celestica Inc. Sec. Litig.*, No. 07 CIV. 312, 2014 WL 4160216, at *4 (S.D.N.Y. Aug. 20, 2014) (internal quotation marks and citations omitted). "Rather, the non-moving party must produce admissible evidence that supports its pleadings. In this regard, the mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment." *Id.* (internal quotation marks and citations omitted).

## III. *DISCUSSION*

### A. *DREW DECLARATION AND ACCOMPANYING EXHIBITS*

In its Opposition, NEM Re argues that the Drew Declaration and attached exhibits are not integral to the Complaint and therefore should not be considered on a motion to dismiss. (Dkt. No. 10 at 4–6.) However, since the motion to dismiss was converted to a motion for summary judgment and NEM Re was given the opportunity to present all material pertinent to this Motion, the Court can now consider the Drew Declaration and accompanying exhibits without issue. *See* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

### B. *REQUIREMENTS FOR A CLAIM OF ACCOUNTING*

The Court will first consider if there is a genuine issue of material fact as to whether the requirements for a claim of accounting have been met.

Under New York law, to obtain an accounting, NEM Re must show " '(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.' " *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 207 (S.D.N.Y.2011) (*citing IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F.Supp.2d 395, 411 (S.D.N.Y.2009)).

1. *Relations of a Mutual and Confidential Nature*

▮ Regarding the first criterion, " '[w]hile acknowledging the amorphous nature of a fiduciary relationship, New York courts have generally described it as one in which a party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge.' " *Gate Techs., LLC v. Delphix Capital Markets, LLC,* No. 12 CIV. 7075, 2013 WL 3455484, at *8 (S.D.N.Y. July 9, 2013) (*quoting Ellington Credit Fund, Ltd.,* 837 F.Supp.2d at 191)).

NEM Re has alleged that Fortress was an agent, manager, and fiduciary for Federated (*see* Dkt. No. 1 at ¶¶ 6, 8, 12), which would be sufficient to survive a motion to dismiss. *See Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 49 (2d Cir.1996) ("The plaintiffs have not alleged that PacifiCorp was their agent or fiduciary, and so the district court properly rejected their claim."); *Ellington Credit Fund, Ltd.,* 837 F.Supp.2d at 207 ("Because, as explained above, Plaintiffs have failed to allege the existence of a fiduciary or otherwise confidential relationship with SPS and M & T, much less the SPS Affiliates, the accounting claim merits dismissal.").

However, mere conclusory allegations are not sufficient to survive a motion for summary judgment. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548 ("In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

NEM Re has not provided any evidence that "the parties were in a relationship of sufficient trust and confidence to create either a fiduciary duty or confidential relationship." *Stadt v. Fox News Network LLC,* 719 F.Supp.2d 312, 323 (S.D.N.Y. 2010) ("To support the contention that 'Fox owed Stadt a fiduciary duty,' the Complaint alleges that Stadt and Fox 'entered [into] a confidential relationship' and that 'Fox acknowledged that Stadt was vulnerable and dependent.' Stadt offers no support for these conclusory statements.").

▮ Furthermore, courts have typically held that a "conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Ellington Credit Fund, Ltd.,* 837 F.Supp.2d at 194 (*quoting Friedman v. Anderson,* 23 A.D.3d 163, 803 N.Y.S.2d 514, 516 (1st Dep't 2005)). Therefore, parties in a contractual relationship "do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." *IMG Fragrance Brands, LLC,* 679 F.Supp.2d at 409 (internal quotation marks omitted); *Henneberry v. Sumitomo Corp. of Am.,* 532 F.Supp.2d 523, 550 (S.D.N.Y.2007) ("Moreover parties dealing at arms length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation, absent extraordinary circumstances.").

▮ To determine whether the parties have agreed to this type of relationship, courts typically look to the agreement itself. *See EBC I, Inc. v. Goldman, Sachs & Co.,* 5 N.Y.3d 11, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005) ("Generally, where parties have entered into a contract, courts look to that agreement 'to discover … the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency.' 'If the

parties ... do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.'") (internal citations omitted). However, in this case, NEM Re has not provided the underlying agreement or contract between Federated and Fortress that would establish that the parties had agreed to " 'relations of a mutual and confidential nature' " as opposed to a "typical, arms length business relationship." *Stadt*, 719 F.Supp.2d at 323.

The Court finds that Fortress has satisfied its burden of showing no genuine issue of material fact as to whether a fiduciary relationship existed. Since NEM Re has not provided any support or admissible evidence for the conclusory assertion that a fiduciary relationship existed, the Court finds that the first criterion is not met. *See In re Celestica Inc. Sec. Litig.*, 2014 WL 4160216, at *4 ("In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than simply show that there is some metaphysical doubt as to the material facts, and it may not rely on conclusory allegations or unsubstantiated speculation.") (internal quotation marks and citations omitted).

#### 2. *No Adequate Legal Remedy*

■ Although the Court's finding that NEM Re has not provided evidence to demonstrate that a fiduciary or confidential relationship existed between Fortress and Federated is sufficient to dismiss NEM Re's claim for accounting, the Court also considers whether NEM Re has demonstrated there is no adequate legal remedy, the third requirement for an accounting claim.[4] *See Ellington Credit Fund, Ltd.*, 837 F.Supp.2d at 207 (*citing IMG*

*Fragrance Brands, LLC*, 679 F.Supp.2d at 411).

■ Under New York law, "[a]n accounting claim is not proper where money damages are recoverable under alternative causes of action for the same injury." *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F.Supp.2d 384, 425 (S.D.N.Y.2007) *aff'd sub nom. CSI Inv. Partners II, L.P. v. Cendant Corp.*, 328 Fed.Appx. 56 (2d Cir.2009); *see also also Telesco v. Neuman*, No. 14 CIV. 3480, 2015 WL 2330166, at *7 (S.D.N.Y. Mar. 11, 2015); *Arrow Commc'n Labs., Inc. v. Pico Products, Inc.*, 219 A.D.2d 859, 632 N.Y.S.2d 903, 905 (4th Dep't 1995) ("Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity.' ").

NEM Re not only requests an accounting but also seeks the amount found to be due from that accounting, including prejudgment and post judgment interest. NEM Re seeks monetary damages which are recoverable under a cause of action at law, namely a breach of contract claim. Therefore, a claim for accounting is not proper. Since NEM Re has not provided any evidence to rebut Fortress's showing that no genuine issue of material fact exists on this issue, the Court finds that the third requirement for a cause of action for accounting is not met.

In conclusion, the Court finds that Fortress has satisfied its burden of showing there is no genuine issue of material fact as to whether NEM Re has met the requirements of a cause of action for an accounting, namely (1) whether there was a fiduciary or confidential relationship be-

---

4. The Court will not consider whether NEM Re has demonstrated the second and fourth requirements for an accounting claim as failure to provide evidence of the first and third criteria is sufficient to dismiss NEM Re's claim for accounting on summary judgment.

tween Federated and Fortress and (2) no adequate remedy at law. NEM Re has not provided specific evidence showing that a genuine issue for trial exists. As the Court, based on the summary judgment record, is now persuaded that no genuine issue of material fact remains as to whether the requirements for a claim of accounting under New York law have been met, the Court finds that summary judgment on this issue is appropriate.

## C. STATUTE OF LIMITATIONS FOR BREACH OF CONTRACT CLAIM

Since NE RE has failed to meet the requirements for a claim of accounting and the primary issue in the parties' submissions is the statute of limitations, the Court can look to the "essence" of NEM Re's claim to determine if it is fundamentally an action at law that could survive a motion for summary judgment. See State v. Cortelle Corp., 38 N.Y.2d 83, 378 N.Y.S.2d 654, 341 N.E.2d 223, 224 (1975) ("In applying a Statute of Limitations it is basic that one look to the essence of plaintiff's claim and not to the form in which it is pleaded.") (internal citations omitted); see also U.S. ex rel. Bilotta v. Novartis Pharm. Corp., 50 F.Supp.3d 497, 549 (S.D.N.Y.2014) (same).

As mentioned above, NEM Re has not demonstrated that there is a fiduciary or confidential relationship between Fortress and Federated and has failed to provide

evidence that there is no adequate remedy at law. Therefore, this Court finds the "essence" of NEM Re's claim of accounting is actually an action for breach of contract, seeking monetary damages. See, e.g., Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 49 (2d Cir.1996) ("In some cases, the New York courts have held that a fiduciary or confidential relationship is not necessary to obtain judicial relief—but they have done this only by treating the action for accounting as an action at law for monetary relief, and not as an equitable action for accounting.").

In New York, an action for breach of contract has a six-year statute of limitations. N.Y. C.P.L.R. § 213(2). The statute of limitations begins to run when the party making the claim "possesses a legal right to demand payment." Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co., 18 N.Y.3d 765, 944 N.Y.S.2d 742,967 N.E.2d 1187, 1190–91 (2012) ("A consistent line of Appellate Division precedent holds that, where 'the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment.' In other words, the statute of limitations in these cases was triggered when the party that was owed money had the right to demand payment, not when it actually made the demand.") (internal citations omitted).[5]

---

5. In this case, although the Court does not have a copy of the agreement or contract between Federated and Fortress, there is no allegation that a demand and subsequent refusal was contractually required. Therefore, the demand is procedural as opposed to substantive. See Lehman XS Trust, Series 2006–4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc., 991 F.Supp.2d 472, 476 (S.D.N.Y.2014) ("A substantive demand is an 'essential [legal] element of the plaintiff's cause of action.' In these cases, the statute of limitations does not begin to run until demand is made and refused. By contrast, a procedural demand is 'not [a] requisite element[] of the cause of action,' but a mere procedural trigger to commence proceedings. '[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete.' The period 'runs from the time when the party making the demand first becomes [legally] entitled to make the demand, and not from the time the actual demand is made.' ") (emphasis in original).

The Court. finds that NEM Re had the legal right to demand payment when the Commissioner assigned all of Federated's uncollected accounts receivable to NEM Re in 2004. (*See* Dkt. No. 1 at ¶ 8.) Therefore, the statute of limitations started running in 2004 and expired in 2010, five years prior to NEM Re filing the current action. The Court finds that Fortress has satisfied its burden of showing no genuine issue of material fact as to when the statute of limitations began to run.

The burden now shifts to NEM Re to provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586, 106 S.Ct. 1348; *Shannon*, 332 F.3d at 99. To do so, NEM Re must "produce admissible evidence that supports its pleadings. In this regard, [t]he mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment." *In re Celestica Inc. Sec. Litig.*, 2014 WL 4160216, at *4 (internal quotation marks and citations omitted).

NEM Re claims that Fortress sent NEM Re a letter dated June 4, 2009 indicating that Fortress retained some funds on behalf of Federated. (Dkt. No. 1 at ¶ 12.) Although NEM Re might be attempting to argue that the date of this communication indicates that the statute of limitations was tolled, NEM Re has failed to provide a copy of the alleged communication. Therefore, since NEM Re has not provided admissible evidence of tolling, it is simply "rely[ing] on conclusory allegations or unsubstantiated speculation." *In re Celestica Inc. Sec. Litig.*, 2014 WL

4160216, at *4 (internal quotation marks omitted).

Accordingly, the Court, based on the summary judgment record, is now persuaded that no genuine issue of material fact remains as to whether NEM Re has a viable claim for breach of contract. Thus, the Court finds that summary judgment on this issue is appropriate.

Since the. Court finds that there is no genuine issue of material fact as to NEM Re's claim for accounting or a breach of contract action, the Court grants Fortress's Motion for summary judgment and dismisses NEM Re's Complaint in its entirety.

## IV. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the Motion to Dismiss the Complaint (Dkt. No. 6) of Defendant Fortress Re, Inc. ("Fortress"), which was converted into a motion for summary judgment ("Motion") by this Court on August 19, 2015 (Dkt. No. 13), is **GRANTED**.

The Clerk of Court is directed to terminate the Motion to Dismiss (Dkt. No. 6) and to close this case.

**SO ORDERED.**

---

Even if a demand was required by the contract, the statute of limitations would have started to run, at the latest, on May 23, 2005 when outside counsel for NEM Re sent a letter to Fortress requesting any additional funds. (*See* Dkt. No. 7, Ex. 4.) However,

NEM Re concedes in its Opposition that the statute of limitations would have started to run for a breach of contract claim when "plaintiff had a legal right to demand payment." (Dkt. No. 10 at 3.)