■ THE PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Respondent, v CREDIT SUISSE SECURITIES (USA) LLC, Formerly Known as CREDIT SUISSE FIRST BOSTON LLC, et al., Appellants. [47 NYS3d 236]—

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered December 24, 2014, which, insofar as appealed from, denied the motion of defendants Credit Suisse Securities (USA) LLC, formerly known as Credit Suisse First Boston LLC, DLJ Mortgage Capital, Inc., Credit Suisse First Boston Mortgage Securities Corporation, Asset Backed Securities Corporation and Credit Suisse Mortgage Acceptance Corporation (collectively, Credit Suisse) to dismiss the complaint pursuant to CPLR 3211 (a) (5), affirmed, with costs.

The motion court correctly found that the Attorney General's claims are not time-barred. Credit Suisse was involved in the creation and sale of residential mortgage-backed securities (RMBS) in 2006 and 2007. As of March 21, 2012, the parties entered into a tolling agreement stating that the Attorney General was investigating Credit Suisse's business practices, and that the parties agreed to toll the applicable limitations period for any potential claim by the Attorney General. The tolling period began on March 8, 2012 and ended three years from the agreement's execution date.

On November 20, 2012, the Attorney General commenced this action, interposing causes of action for securities fraud under the Martin Act (General Business Law, art 23-A, § 352 *et seq.*) and for persistent fraud or illegality under Executive Law § 63 (12). In this complaint, the Attorney General alleges that Credit Suisse failed to abide by its representations that it was taking a variety of steps to ensure the quality of the loans underlying its RMBS. Specifically, the Attorney General alleges, Credit Suisse's actual due diligence process was very different from its public representations about the quality of its due diligence, in that it falsely represented to investors that it had conducted a thorough examination of loans pursuant to a philosophy of ensuring the borrowers' ability to repay. Further, the Attorney General alleges that while Credit Suisse acknowledged internally the bad quality of the loans that the origina-

tors sold, Credit Suisse falsely represented to investors that it "influence[d]" originators to "utilize appropriate origination practices." Credit Suisse also allegedly represented that its quality control process was designed to "increase" the "quality" of loans in its RMBS, though, in reality, Credit Suisse continued to securitize loans from the same originators that its quality control process identified as problematic. The essence of the Attorney General's claims under both Executive Law § 63 (12) and the Martin Act is that Credit Suisse made false representations in order to induce investors to purchase the securities.

General Business Law § 353 (1) states, "Whenever the attorney-general shall believe . . . that any person . . . has engaged in . . . fraudulent practices, he may bring an action . . . to enjoin such person . . . from continuing such fraudulent practices." Moreover, section 353 (3) provides, "Upon a showing by the attorney general that a fraudulent practice . . . has occurred, he may include . . . an application to direct restitution of any moneys or property obtained . . . by any such fraudulent practice."

In turn, Executive Law § 63 (12) states, in relevant part, "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on . . . of business, the attorney general may apply . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, [and] directing restitution and damages."

As originally enacted, however, section 63 (12) provided no definition of the term "fraud" (*see* L 1956, ch 592, § 1). Rather, the section's definition of that term was added in 1965 (*see* L 1965, ch 666, § 1)—specifically, "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, [or] false promise."

As this Court previously held in *State of New York v Bronxville Glen I Assoc.* (181 AD2d 516, 516 [1st Dept 1992]), the statute of limitations for an action brought by the Attorney General under the Martin Act alleging investor fraud "is six years pursuant to CPLR 213 (8), and not three years pursuant to CPLR 214" (*see also Podraza v Carriero*, 212 AD2d 331, 340 [4th Dept 1995], *lv dismissed* 86 NY2d 885 [1995]; *Loengard v Santa Fe Indus., Inc.*, 573 F Supp 1355, 1359 [SD NY 1983]). More recently in *Matter of People v Trump Entrepreneur Initiative LLC* (137 AD3d 409 [1st Dept 2016], *lv granted* 2016 NY Slip Op 73667[U] [May 17, 2016] [*Trump*]) we analyzed the issue of the statute of limitations for claims brought under

Executive Law § 63 (12). In conducting this analysis, we first noted that the language of section 63 (12) parallels the language of the Martin Act (*Trump*, 137 AD3d at 417-418). Additionally, we noted, section 63 (12) " 'did not "make" unlawful the alleged fraudulent practices, but *only provided standing in the Attorney-General to seek redress and additional remedies for recognized wrongs which pre-existed the statute* [ ]' " (*id.* at 416, quoting *State of New York v Cortelle Corp.*, 38 NY2d 83, 85 [1975]). We further found that "section 63 (12) does not encompass a significantly wider range of fraudulent activities than were legally cognizable before the section's enactment" (*Trump* at 418, citing *State of New York v Bronxville Glen I Assoc.*, 181 AD2d at 516). Thus, we concluded, the Attorney General's "fraud claim under [Executive Law § ] 63 (12) . . . is subject to the residual six-year statute of limitations in CPLR 213 (1)" because the section "does not create any liability nonexistent at common law, at least under the court's equitable powers" (*Trump* at 418).

We adhere to that determination here. The conduct targeted under section 63 (12) parallels the conduct covered under the Martin Act's definition of fraud in that both the Martin Act and section 63 (12) target wrongs that existed before the statutes' enactment, as opposed to targeting wrongs that were not legally cognizable before enactment. Accordingly, section 63 (12) is not subject to the three-year statute of limitations under CPLR 214 (*see Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169, 174 [1986]).

The dissent maintains that the complaint is based on statutory violations encompassing a larger range of claims than were legally cognizable before section 63 (12)'s enactment. But, as noted above, and as we noted in *Trump*, the conduct at issue in this action was, in fact, always subject to granting of relief under the courts' equitable powers (*see e.g. People v Federated Radio Corp.*, 244 NY 33, 38-39 [1926]).

Further, CPLR 213 (1), rather than CPLR 214 (2), is applicable to an Executive Law § 63 (12) claim based on a scheme to obtain ownership of distressed properties by means of fraudulent misrepresentations (*Cortelle Corp.*, 38 NY2d 83).

The argument that *Bronxville Glen I Assoc.* and *Cortelle Corp.* have been superseded by *Gaidon v Guardian Life Ins. Co. of Am.* (96 NY2d 201 [2001]), is unavailing (*see Trump*, 137 AD3d at 418). In *Gaidon,* which applied CPLR 214 (2) to a General Business Law § 349 (h) claim, the Court stated that "General Business Law § 349, *as invoked in this case,* falls in the . . . category" of "claims which, although akin to common-

law causes, *would not exist but for the statute"* (*Gaidon* at 209 [internal quotation marks omitted and additional emphasis added]).

Contrary to the dissent's conclusion, the complaint sets forth the elements of common-law fraud, including scienter or intent, reliance, and damages. The allegations in the complaint describe a specific scheme whereby Credit Suisse "benefit[ed] [itself] at the expense of investors." As the trial court correctly found, "these claims seek to impose liability on [Credit Suisse] based on the classic, longstanding common-law tort of investor fraud," thus invoking a six-year statute of limitations. Concur—Moskowitz, Kapnick and Webber, JJ.

Friedman, J.P., and Andrias, J., dissent in a memorandum by Andrias, J., as follows: In November 2012, the State Attorney General commenced this action alleging that defendants violated the Martin Act (General Business Law § 352 *et seq.*) and Executive Law § 63 (12) by committing multiple fraudulent and deceptive acts in connection with the promotion and sale of residential mortgage-backed securities (RMBS) through the end of 2007. The majority affirms the denial of defendants' motion to dismiss the complaint as time-barred, finding that the Martin Act and Executive Law § 63 (12) claims are governed by the six-year limitation periods of CPLR 213 (8) and CPLR 213 (1), respectively. Because I believe that the three-year statute of limitations of CPLR 214 (2) applies to the Attorney General's claims, as pleaded in this action, I respectfully dissent.

Neither the Martin Act nor Executive Law § 63 (12) contain its own statute of limitations. Thus, to determine the applicable statute of limitations, we must examine the complaint to identify "the gravamen or essence of the cause[s] of action" (*Western Elec. Co. v Brenner*, 41 NY2d 291, 293 [1977]).

Where claims are "to recover upon a liability . . . created or imposed by statute" (CPLR 214 [2]), and the liability, although akin to common-law causes, "would not exist but for [the] statute" (*Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169, 174 [1986]), the three-year statute of limitations of CPLR 214 (2) applies (*see Gaidon v Guardian Life Ins. Co. of Am.*, 96 NY2d 201, 208 [2001] [*Gaidon II*]). In contrast, where a statute "merely codifies and affords new remedies for what in essence is a common-law . . . claim[,]" CPLR 214 (2) does not apply and "the Statute of Limitations for the statutory claim is that for the common-law cause of action which the statute codified or implemented" (*id.* at 208).

In the complaint, the Attorney General alleges, inter alia,

that defendants' fraud was their failure to abide by their representations that they had carefully evaluated and would continue to monitor the quality of the loans underlying their RMBS, and that they would encourage loan originators to implement sound origination practices. Instead, defendants routinely ignored defects discovered in their due diligence reviews and did not seek to influence originators to utilize appropriate origination practices, choosing instead to misuse their quality control process to obtain significant monetary settlements from originators, which defendants improperly kept for themselves. Based on this conduct, in the first cause of action, labeled "Securities Fraud—General Business Law Article 23-A," the Attorney General alleges that "[t]he acts and practices of Defendants alleged herein violated Article 23-A of the General Business Law in that Defendants employed deception, misrepresentations, concealment, suppression, fraud and false promises regarding the issuance, exchange, purchase, sale, promotion, negotiation, advertisement and distribution of securities."

In the second cause of action, labeled "Persistent Fraud or Illegality—Executive Law § 63 (12)," the Attorney General alleges that "[t]he acts and practices alleged herein constitute conduct proscribed by § 63 (12) of the Executive Law, in that Defendants engaged in repeated fraudulent or illegal acts (in violation of, inter alia, the Martin Act) or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting or transaction of business."

These claims, as pleaded, fall within the category of claims that would not exist but for the statutes, creating a new basis for liability, not a new remedy, and the three-year statute of limitations of CPLR 214 (2) applies (see Gaidon II, 96 NY2d at 208-209; State of New York v Daicel Chem. Indus., Ltd., 42 AD3d 301, 303 [1st Dept 2007]).

In Gaidon II, the Court of Appeals applied the three-year limitations period of CPLR 214 (2) to a General Business Law § 349 claim on the ground that misrepresentations in promotional materials used in selling vanishing premium insurance policies "did not rise to the level necessary to establish a common-law fraud claim," but were actionable under section 349, "a creature of statute based on broad consumer-protection concerns" (Gaidon II at 209 [internal quotation marks omitted]). The Court reasoned that while section 349 "may cover conduct 'akin' to common-law fraud, it encompasses" misrepresentations that the Court did not consider sufficiently material to be common-law fraud but nevertheless could deceive the

public (*id.*). Thus, examining the Attorney General's allegations "as invoked" in the case, the Court explained that "substantive differences between the claims under General Business Law § 349 here and common-law fraud were most pointedly demonstrated by our disposition of those respective causes of action in *Gaidon I*. There, we held that, because of the disclaimers in the promotional illustrations Guardian Life used in selling its vanishing premium policies, the *misrepresentations* in those materials and by sales agents did not rise to the level necessary to establish a common-law fraud claim. Yet we also held that the disclaimers were not sufficient to dispel the deceptiveness of Guardian Life's sales practices with respect to the same illustrations for purposes of alleging violation of General Business Law § 349. Thus, despite plaintiffs' and the Attorney General's contentions to the contrary, it is not merely the absence of scienter that distinguishes [a] violation of section 349 from common-law fraud; section 349 encompasses a significantly wider range of deceptive business practices that were never previously condemned by decisional law" (96 NY2d at 209-210).

This rationale applies equally to the General Business Law § 352 securities fraud claim that the Attorney General has pleaded herein.

General Business Law §§ 352 and 353 authorize "the Attorney General to investigate and enjoin fraudulent practices in the marketing of stocks, bonds and other securities within or from New York State" (*Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236, 243 [2009] [citations omitted]). General Business Law § 352 (1) defines "fraudulent practice" in relevant part as: "any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise, or . . . any deception, misrepresentation, concealment, suppression, fraud, false pretense or false promise, or . . . any practice or transaction or course of business relating to the purchase, exchange, investment advice or sale of securities or commodities which is fraudulent or in violation of law and which has operated or which would operate as a fraud upon the purchaser . . . ."

Because the purpose of the law is to prevent all kinds of fraud in connection with the sale of securities and commodities, "the terms 'fraud' and 'fraudulent practices' [are] to be given a wide meaning so as to embrace all deceitful practices contrary to the plain rules of common honesty, including all acts, even though not originating in any actual evil design to perpetrate fraud or injury upon others, which do tend to deceive

or mislead the purchasing public" (*People v Lexington Sixty-First Assoc.*, 38 NY2d 588, 595 [1976]; *see also People v Federated Radio Corp.*, 244 NY 33, 38-41 [1926]). Thus, unlike an action for common-law fraud, where "the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]), to state a claim under General Business Law § 352 *et seq.* the Attorney General does not have to allege scienter or intentional fraud, or reliance (*see State of New York v Rachmani Corp.*, 71 NY2d 718, 725 n 6 [1988] ["to establish liability for fraudulent practices in an enforcement proceeding under the Martin Act, the Attorney-General need not allege or prove either scienter or intentional fraud"]; *Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt. Inc.*, 18 NY3d 341, 350 [2011] [same]).[1] Furthermore, because the Martin Act does not require a showing of reliance, a disclaimer that may render unreasonable reliance by a private plaintiff investor has no legal significance in an enforcement action brought on behalf of the public (*see State of New York v Sonifer Realty Corp.*, 212 AD2d 366, 367 [1st Dept 1995] ["Even if the disclaimers . . . were sufficiently specific . . . , they cannot bar claims brought under the Martin Act (General Business Law § 352-c; *see also*, Executive Law § 63 [12]), since the fraudulent practices targeted by the statute need not constitute fraud in the classic common-law sense, and reliance need not be shown in order for the Attorney-General to obtain relief"]).

The Attorney General's Martin Act claim invoked in this case does not allege scienter or justifiable reliance, and liability would be imposed based solely on a misrepresentation or an omission of a material fact. None of the allegations of the complaint accuses defendants of knowingly or recklessly misrepresenting a fact to an investor in order to deceive that investor (*see Friedman v Anderson*, 23 AD3d 163, 166-167 [1st Dept 2005]). Furthermore, the marketing materials contained clear warnings that they should not be relied upon in connection with the purchase of RMBS certificates and the official offering documents contained the only statements on which the purchaser could rely. Accordingly, as in *Gaidon II*, the claim would not exist at common law because it makes "actionable conduct that does not necessarily rise to the level of fraud,"

---

1. Similarly, although equitable fraud does not require scienter, reliance is still an element (*see People v Federated Radio Corp.*, 244 NY at 40-41).

(*Gaidon II*, 96 NY2d at 209), and the three-year limitations period of CPLR 214 (2) applies.

To hold that the six-year limitations period of CPLR 213 (8) applies, the majority relies on *State of New York v Bronxville Glen I Assoc.* (181 AD2d 516 [1st Dept 1992]), which predates *Gaidon II*. In *Bronxville*, this Court held that a six-year limitations period under CPLR 213 (8) applied because "[l]iability for investor fraud was not created by the Martin Act, but is recognized in case law predating that legislation" (181 AD2d at 516). The Court reasoned that liability was considered to be created by statute if the state established a unique species of liability entirely unknown at common law. Because liability for investor fraud was not created by the Martin Act, but was recognized in case law predating its legislation, the Court held that CPLR 214 (2) did not apply. However, as defendants argue, under *Gaidon II*, it is not sufficient for a statutory claim to be merely "recognized" in case law for the common-law statute of limitations to be applied. Rather, *Gaidon II* requires a more searching analysis and reaffirms that a statutory claim "akin to" but sufficiently different from a common-law claim is governed by CPLR 214 (2)'s three-year statute of limitations (*Gaidon II*, 96 NY2d at 208-210; *see also United States ex rel. Bilotta v Novartis Pharms. Corp.*, 50 F Supp 3d 497, 549-550 [SD NY 2014] ["While it may be true that these statutes 'incorporate ( ) already existing standards applied to fraudulent behavior always recognized as such,' this factor is not dispositive, because these statutes 'may in part expand the definition of fraud so as to create a new liability in some instances,' such that C.P.L.R. § 213 applies instead" (emphasis omitted)]).

Furthermore, *Bronxville* relied on *Reusens v Gerard* (160 App Div 625, 627 [1st Dept 1914]), where this Court held that the complaint at issue alleged "all the essentials of an action for fraud and deceit, i.e., a representation by acts for the public, and, therefore, for the plaintiffs, to act upon, falsity, scienter, deception and injury" (*see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F Supp 2d 243, 267 [ED NY 2012] [comparing a 1975 case on which *Bronxville* relied, which had stated that the Martin Act "incorporates already existing standards applied to fraudulent behavior always recognized as such," with *Gaidon II*, which "explained that the liabilities imposed by (the consumer fraud statute) were different from common-law fraud in several critical ways, since the statute did not require proof of scienter and outlawed conduct that did not necessarily rise to the level of fraud" and holding that CPLR 214 (2) applied to insurers' claims under New York's no-fault laws (emphasis omitted)]).

Similarly, under Executive Law § 63 (12), "the test for fraud is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud" (*People v General Elec. Co.*, 302 AD2d 314, 314 [1st Dept 2003]).[2] As with General Business Law § 352 *et seq.*, fraud may be established without proof of scienter or reliance (*see State of New York v Daicel Chem. Indus., Ltd.*, 42 AD3d at 301-302, 303; *People v American Motor Club*, 179 AD2d 277, 283 [1st Dept 1992], *appeal dismissed* 80 NY2d 893 [1992]).

In *Daicel*, the Attorney General appealed from the dismissal of a complaint that the manufacturers conspired to fix the price of food additives. This Court, following *Gaidon II*, held that "[the AG's] second and third causes of action, under Executive Law § 63 (12) and General Business Law § 349, were properly found to be time-barred by the three-year statute of limitations. These claims rely on allegations of conduct made illegal by statute, and do not even allege all the elements of common-law fraud, and as such they are covered by CPLR 214 (2)" (42 AD3d at 303 [citation omitted]).

Consequently, because the Attorney General's Executive Law § 63 (12) claim is derived from the General Business Law § 352 claim, and does not allege scienter or reliance, the three-year limitation period prescribed in CPLR 214 (2) also applies (*see United States ex rel. Bilotta v Novartis Pharms. Corp.*, 50 F Supp 3d at 547-551; *People v Pharmacia Corp.*, 27 Misc 3d 368, 373 [Sup Ct, Albany County 2010] ["An examination of (the) complaint reveals that the State's allegations fall well short of alleging fraud actionable at common law. The State acknowledged as much in its written submissions and at oral argument. Thus, this is not a case in which the State simply is relying upon the generous remedies made available to the Attorney General under Executive Law § 63 (12), but rather one in which the State seeks to establish a liability that arises solely from statute"]; *People v City Model & Talent Dev.*, 29 Misc 3d 1205[A], 2010 NY Slip Op 51704[U], *4 [Sup Ct, Suffolk County 2010] ["While the six-year limitation period would apply if the

---

**2.** Executive Law § 63 (12) provides in relevant part: "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts . . . The word 'fraud' or 'fraudulent' as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions."

conduct alleged were sufficient to constitute common-law fraud, here the petitioner does not plead the elements of fraud but only statutory violations which do not rise to the level of fraud and, as such, encompass a far greater range of claims that were never legally cognizable before (their) enactment" (internal quotation marks omitted)]; *People v Empire Prop. Solutions, LLC*, 2011 NY Slip Op 33040[U], \*16-17 [Sup Ct, Nassau County 2011]).

Relying on this Court's recent decision in *Matter of People v Trump Entrepreneur Initiative LLC* (137 AD3d 409, 417-418 [1st Dept 2016]), the majority disagrees and holds that a six-year limitations period applies. In *Trump*, which dealt with the issue of whether the Attorney General could bring a standalone fraud claim under Executive Law § 63 (12), the panel recognized that fraud under section 63 (12) may be established without proof of scienter or reliance, that the Attorney General need not limit itself to a claim for common-law fraud only, and that the section defines the conduct that it prohibits and authorizes the Attorney General to commence an action or proceeding to foreclose that conduct. Nevertheless, the panel applied a six-year limitations period, on the ground that section 63 (12) "does not create any liability nonexistent at common law, at least under the court's equitable powers . . . [and] does not encompass a significantly wider range of fraudulent activities than were legally cognizable before the section's enactment" (*id.* at 418). However, in light of the holding in *Gaidon II*, which remains the controlling precedent, and our decision in *Daicel*, I do not believe that a six-year limitations period always applies to Martin Act and Executive Law § 63 (12) claims, where, as here, the complaint does not plead scienter and reliance or is otherwise based on statutory violations that encompass a greater range of claims than was legally cognizable before the statute's enactment.

Nor does *State of New York v Cortelle Corp.* (38 NY2d 83, 88-89 [1975]), cited by the majority on which *Trump* relied, hold that claims brought under section 63 (12) are always governed by a six-year limitation period. In *Cortelle*, plaintiff alleged that defendants had induced distressed owners of residences whose mortgages were about to be foreclosed to enter into sale-leaseback agreements by making "representations [that] were willfully false and part of a scheme to obtain the permanent ownership of distressed properties by fraud" (*id.* at 85-86, 89). Although the *Cortelle* Court applied a six-year limitation period, it did so after analyzing the nature of plaintiff's claim and concluding that it was based on longstand-

ing common-law principles of fraud, with the Attorney General alleging all elements of the preexisting "common-law theory of promissory fraud" (*id.* 38 NY2d at 88), which requires proof of both intent and reliance.

Accordingly, as the Attorney General is seeking relief under a broader definition of fraud created by the statutes, defendants' motion to dismiss the Martin Act and Executive Law § 63 (12) claims as time-barred under CPLR 214 (2) should be granted.

Motion to file supplemental briefs granted.